### OGILVIE HARDWARE CO., Inc., v. UNITED STATES.

#### Civil Action No. 1256.

District Court, W. D. Louisiana, Shreveport Division.

Oct. 3, 1945.

H. C. Walker, Jr., and E. Goldstein, both of Shreveport, La., for plaintiff.

M. E. Lafargue and J. A. Patin, both of Shreveport, La., for defendant.

DAWKINS, District Judge.

The facts in this case are not disputed and are as follows:

The Ogilvie Hardware Company was incorporated in 1907 with a capital stock of 1000 shares of the par value of $100,000, issued and outstanding; and on August 12, 1918, $100,000 of seven per cent preferred stock was authorized, of which $23,000 was issued in 1919 and $15,300 in 1920. At the end of the fiscal year, May 31, 1924, the corporation had a surplus of $149,306.43, out of which it declared a stock dividend of 100 per cent and issued to its shareholders an additional 1000 shares of common stock of the par value of $100,000. At the same time it declared a cash dividend of $14,-681, thus leaving in its surplus the sum of $42,229.70. January 23, 1934, the charter was amended so as to establish two classes of preferred stock, A and B, and the preferred stock authorized and issued on August 12, 1918, became Class B.

On April 18, 1934, the corporation being "badly in need of a loan" borrowed from individuals the sum of $23,000, represented by note and, as a bonus or further consideration for the loan, there was issued to the lenders Class A preferred stock of the par value of $23,000, which carried

with it full voting rights with respect to control and management. The loans of $23,000 were due July 15, 1935, but were paid in full "during the fiscal years ending in 1937 and 1938." The preferred stock issued to the lenders was redeemed "partly in 1940 and 1941 and the remainder * * * in 1943 and 1944."

The taxpayer's books, at the end of the fiscal year of May 31, 1936, showed a deficit of $74,875.10, which included "net operating losses since the declaration of the stock dividend in 1924" and the $23,000 paid as a bonus in preferred stock Class A in 1934, charged at the time to surplus, but subsequently redeemed as above stated.

The books also showed operating deficits in the fiscal years of May 31, 1937, of $71,-347.18 and of May 31, 1938, of $60,923.58.

Stipulation IX recites:

"The dispute in this case relates entirely to the right of the taxpayer to take into consideration in determining the amount of its surplus or deficit, as the case might be, the $100,000 common stock dividend and the $23,000 stock bonus."

The taxpayer returned and paid for the year 1937 an income tax in the amount of $3,362.93 and a profits tax of $142.72, or a total of $3,505.65, and for the year 1938 total taxes of $3,656.25. The Commissioner, on examination of the returns of 1937, assessed additional taxes of $6;249.21, of which $5,426.93 consisted of a surtax on undistributed profits, which was paid. A similar reassessment for 1938 resulted in the imposition of additional taxes in the sum of $502.14, which were also paid. Of the total taxes paid for 1938, "$1,488.86 consisted of surtaxes on undistributed profits."

After the passage on October 21, 1942, of the Revenue Act for that year, particularly Section 501(c), 26 U.S.C.A. Int.Rev.Acts, the taxpayer filed claims for "refunds of surtaxes on undistributed profits in the amounts of $5,426.93 and $1,488.86 for the fiscal years ending May 31, 1937 and May 31, 1938, respectively * * * on the ground" that the taxpayer had a continuous deficit in accumulated earnings and profits on May 31, 1936, on May 31, 1937, and on May 31, 1938, which deficits on each of the three dates named, exhausted the total amount of its income for those fiscal years, and it was thus prohibited by the Louisiana law from paying dividends. The

claims having been denied, this suit was instituted to recover the full amount of the alleged overpayments, totalling $6,915.79, with six per cent interest from date of each payment.

There are three points of law involved, which, in substance, are as follows:

1st. Whether the stock dividend of 1924 can be said to have diminished the accumulated earnings and profits of the taxpayer within the meaning of Section 26(c) (3) of the Revenue Act of 1936, as amended by Section 501(a) (2) of the Revenue Act of 1942;

2nd. Whether within the meaning of the statute as amended "the taxpayer was prohibited by state law from paying. dividends for the fiscal years ending May 31, 1937 and May 31, 1938"; and

3d. If recovery is allowed, from what dates interest should be figured.

Prior to 1936, corporations had been able to escape taxation upon much of their earnings and profits by declaring "stock dividends." The Revenue Act of that year (C. 690, Secs. 13 and 14), 26 U.S.C.A. Int. Rev.Acts, pages 822, 823, imposed income and surtaxes upon the undistributed profits of the corporation, and Section 26, 26 U.S.C.A. Int.Rev.Acts, page 835, provided the credits which might be taken thereon, among which was [(c) (2)] "an amount equal to the portion of earnings and profits of the taxable year which is required (by a provision of a written contract executed * * * prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside."

In order to make clear its purpose to tax undistributed income and profits, the Revenue Act of 1936, Ch. 690, Sec. 115(h), 26 U.S.C.A. Int.Rev.Acts, page 868, provided:

"Effect on earnings and profits of distributions of stock. The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—

"(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or

"(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under Section 115(f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act. * * *"

The amendment of 1942 was expressly made retroactive and effective as of "the date of the enactment of the Revenue Act of 1936" and any "overpayment shall be refunded or credited in the same manner as in the case of an income tax erroneously collected under the Revenue Act of 1936 * * *." § 501(c). At the time of the stock dividend in the present case in 1924, the revenue law of that year had specifically provided [Sec. 201(f), C. 234, 43 Stat. 253, 26 U.S.C.A. Int.Rev.Acts, page 2] that stock dividends should not be taxable. It had long since been decided by the Supreme Court (March 8, 1920) that a stock dividend could not constitutionally be taxed in the hands of a stockholder. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, and, as stated earlier, the Revenue Act of 1936 was a deliberate attempt to reach undistributed profits of all kinds, including those represented by stock dividends, at least from the passage of that law. At the same time it was recognized that there would be instances where the income of the corporation would be pledged by written contracts to pay debts, such as bond issues, etc.; and, hence, that it should not be penalized for failure to distribute income so bound, to its stockholders.

In the case of Helvering Comm. v. Northwest Steel Mills, 311 U.S. 45, 61 S.Ct. 109, 85 L.Ed. 29, the Supreme Court decided that such credit could not be taken for that portion of the income or undivided profits which the corporation was prohibited from distributing under state law, but only so much as was covered by "provision of a written contract" as provided in subsections (c) (1) and (c) (2) of Sec. 26 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 835, and that restrictions contained in the charter against the declaration of dividends were not such a contract within the meaning of the statute (as between the state and corporation.)

Thereafter, the Revenue Act of 1942 [Sec. 501, C. 619, 56 Stat. 798, Sec. 26(c)] amended the Revenue Act of 1936 to read as follows:

"(c) Restrictions on Payment of Dividends.— * * *

"(3) Deficit corporations. In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

After the Supreme Court had decided in the Northwest Steel Mills case, supra, that a corporation could not take credit for income on profits which it was prohibited from distributing under state law under the provisions of the Revenue Act of 1936, Congress, in the passage of the Revenue Act of 1942, drew a "deadline," so to speak, which had the effect of allowing such credits under any such law or order of any public regulatory body "which was in effect prior to May 31, 1936."

Apparently, it saw the possibility of the states or other regulatory bodies passing such laws when they did not exist on that date. There was no attempt to define or distinguish as between the reasons or grounds by which distribution might be prohibited by state law.

At the time of the stock dividend in this case in 1924, some twelve years before the passage of the Revenue Act of 1936, it was both lawful and justified under the financial condition of the corporation, to declare dividends in stock. There is nothing in the stipulation of facts to question the good faith of the parties or that this stock was treated and handled the same as that originally subscribed insofar as participation in management, profits, etc., or the power of the holders to sell and dispose of it. Its surplus was adjusted by charging it with the value of the additional stock so issued, and continuously thereafter, until the assessment of the deficiencies in 1937 and 1938, its books showed only such surpluses and undivided profits as accrued from year to year without consideration of the $100,000.00 which had represented the stock dividend back in 1924.

Act 250 of the Louisiana Legislature for the year 1928 declares:

"No corporation shall pay dividends in cash or property,

"(a) except from the surplus of the aggregate of its assets over the aggregate of its liabilities, plus the amount of its capital stock." § 26, subd. I.

This is unquestionably a statutory prohibition against the distribution of the income of a corporation as dividends, without taking into consideration, as against its assets and surplus, the par value of its entire stock as a liability. To this extent, the plaintiff was a "deficit corporation" within the meaning of Section 26(a) (3) of the Revenue Act of 1936, as amended by Section 501 of the Revenue Act of 1942, 56 Stat. 954.

Numerous authorities are cited on points which appear not to be disputed. However, the two cases most nearly in point are Century Electric Co. v. Commissioner, 8 Cir., 144 F.2d 983, relied upon by the Government, and United States and Glenn, Collector, v. Byron Sash & Door Co., 6 Cir., 150 F.2d 44, 46, cited by plaintiff.

The Court in the first case rests its affirmance of the tax court's decision, disallowing a credit for the stock issued against surplus, upon the provisions of Section 115(h) of the Revenue Act of 1936, declaring that the distribution of non-taxable stock dividends was not to be considered a distribution of earnings, without discussing at least the effect of the amendment of 1942 permitting the taking of credit for earnings or profits which the corporations were prohibited from distributing under the state law.

In the latter, or Byron Sash & Door Co. case, however, in a factual situation very similar to that of the present case, the Court went at length into the reasons, intents and purposes of the amendment, and reached a conclusion directly opposite to that in the former. The Court, in this latter case, points out that the deficit was caused by losses over a period of seven years subsequent to the conversion of that part of the surplus into capital stock by the issuance of the stock dividend; whereas, in Century Electric Company, the deficit arose from the acts of the corporation in issuing the stock dividends in those identical years, 1936 and 1937, against earnings and profits. Attention was called to the fact that Section 115(h) of the Revenue Act of 1936 "deals with the taxable status of the stockholder who receives stock dividends, rather than with the liability of the corporation for taxes, and to use this provision of the statute in order to

ignore the deficit * * * seems untenable. Moreover, it is based on a false premise—that the deficit was caused by the distribution of the stock dividend. Actually the deficit was caused by seven continuous years of operating losses."

Here, too, the deficit arises, not from the stock dividend of some twelve years before, when the corporation was prosperous and fully justified in declaring it, but from operating losses occurring largely in the depths of the depression of the early 1930's.

The discussion and citation of authorities in the Byron Sash & Door Company case are so exhaustive I do not feel that anything could be added by a repetition of those views here. My conclusion is that the plaintiff should recover.

Interest should be calculated from the various dates on which the instalment paid exceeded the taxes actually due. Blair v. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983.