## UNITED STATES v. OGILVIE HARDWARE CO., Inc.

### No. 11609.

Circuit Court of Appeals, Fifth Circuit.

May 24, 1946.

, Robert R. Reynolds, Jr., Sp. Asst. to the Atty. Gen., and Sewall Key, Acting Asst. Atty.Gen., and Malcolm E. Lafargue, United States Atty., of Shreveport, La., for appellant.

Elias Goldstein and H. C. Walker, Jr., both of Shreveport, La., for appellee.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The suit in the District Court was to recover undistributed profits taxes, unlawfully exacted from Ogilvie Hardware Company for fiscal years ending May 31, 1937 and 1938. The unlawfulness of the exaction was asserted to arise out of the refusal to allow the credit provided by the Revenue Act of 1942, 56 Stat. 798, Section 501, 26 U.S.C.A. Int.Rev.Acts, page 344, which retroactively amended Section 26 of the Revenue Act of 1936. On stipulated facts the District Court held the credit allowable, and gave judgment for the Company. The United States appeals.

The important facts are that the Ogilvie Hardware Company was organized under the laws of Louisiana in 1907, and has since done business in that State. Originally its capital stock was 1,000 shares common stock, total par value being $100,000. In July, 1924, having a surplus of $149,306, it paid a 100% dividend in common stock, $100,000, and also a cash dividend, both being charged out of the surplus and leaving $42,229 as surplus. In 1934 money had to be borrowed and $23,000 more preferred stock was issued as a bonus to the lender. On May 31, 1936, the taxpayer's books disclosed a deficit of $74,875. On May 31, 1937, the deficit was $71,347; and May 31, 1938, $60,923. It is stipulated that the sole question is whether the taxpayer can use the $100,000 common stock dividend and the $23,000 preferred stock bonus, as it did, in showing these deficits. In argument it is conceded that if the stock dividend of $100,000 is to be availed of, the preferred stock may be disregarded, because the deficits would exist without it. The District Court, 62 F.Supp. 338, held that under the law of Louisiana the Company could not in the tax years pay out its current profits so long as the deficit existed, and that under the 1942 amendment it was entitled to the credit claimed, following United States and Glenn, Collector, v. Byron Sash & Door Co., 6 Cir., 150 F.2d 44; and distinguishing on its facts Century Electric Co. v. Commissioner, 8 Cir., 144 F.2d 983.

On reading the report of the last mentioned case in the Tax Court, 3 T.C. 297, we are not sure that the distinction exists which the Sixth Circuit Court in the Byron Sash & Door Co. case thought existed, and which is indicated by the language of the opinion in the Century Electric Co. case. We are therefore dealing with the question as we see it, rather than on authority.

By the Revenue Act of 1936, Section 14, a heavy surtax was laid on corporations on their "undistributed net income", the purpose being to force the payment of dividends so that the dividends might be taxed again as income to the shareholders. Section 26(c) (1) and (2), however, nullified the surtax by a credit to the extent that distribution of the corporate income was prevented by contracts executed prior to May 1, 1936. The Supreme Court held that this credit did not extend to any prevention except by contracts exactly as described in the Section, and that a prevention by the State law under which the corporation exists and acts was not enough. Helvering v. Northwest Mills, 311 U.S. 46, 61

S.Ct. 109, 85 L.Ed. 29. Because of and to remedy this, the amendment of 1942 was made which retroactively controls here. The words to be construed, extending the cases of credits under Section 26, are: "(3) Deficit corporations. In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936." Section 26 of the Louisiana Corporation Law (Louisiana Acts of 1928, No. 250, p. 424) provides that no corporation shall pay dividends in cash or property "except from the surplus of the aggregate of its assets over the aggregate of its liabilities, plus the amount of its capital stock", and expressly excludes from the surplus a number of unrealized values such as appreciation in real estate not sold, profits on notes purchased which have not accrued or been realized, and the like. It is plain that all the capital stock must be treated as a liability in determining whether there is a surplus of assets over liabilities out of which a cash dividend can be paid. If there is a deficit instead of a surplus no cash dividend is lawful. This law was in effect eight years before May 1, 1936. The District Court rightly held that the increase in capital stock by the stock dividend in 1924, lawfully made, increased the capital stock of the Company, and the additional stock must be included with the other stock and liabilities in determining whether there was a dividend surplus and that, there being no question about the aggregate of the assets, the State law prevented the payment of dividends in the tax years.

■ Turning to the words in the federal amendment, "A deficit in accumulated earnings and profits", they are not specially defined and ought to have their natural, common meaning. They occur twice in the single clause of the amendment. In the second occurrence the context is, "the corporation is prohibited by law from paying dividends during the existence of a deficit in accumulated earnings and profits." Clearly the deficit here referred to is that which the State law makes a deficit in prohibiting the payment of dividends. We see no propriety in constructing a different meaning in their first occurrence, "In the case of a corporation having a deficit in accumulated earnings and profits." It is the same corporation in the same condition that is referred to. A corporation which exists under Louisiana law and has a deficit and not a surplus under that law and is thereby prevented from paying dividends, is a corporation protected by the amendment. There is no justification for saying that in the last quoted phrase the deficit meant is that which may be figured by adding all the earnings and profits the corporation has made since its beginning and subtracting only what has been paid out in taxable dividends. The remedy expressed by the amendment is to give to prevention by a law made before May 1, 1936, the same effect that prevention by a contract executed before that date is given in relieving from the surtax on nondistribution of current earnings and profits.

■■ That divergent meanings be given the same words in the beginning and end of the same clause is said to be required because the Committee which recommended the amendment to the Senate, after stating the object of the amendment as we have just stated it, illustrated its operation by two examples, in the latter of which it was indicated that when "the deficit on the corporation's books was by reason of a prior capitalization of surplus in the course of a nontaxable reorganization" the deficit, so far as thus caused, would not be recognized though it might be by the State law. This example was copied into the Regulations also. It actually speaks only of reorganizations and not of stock dividends. We do not think the example is any part of the unambiguous Act of Congress. It is merely the opinion of the writer of the report on how the legislation would work out in the case of a nontaxable reorganization. The Constitution, Article 1, Section 7, states how the laws of the United States are made: by written Bill, passed by the House and Senate separately, transmitted to the President and approved by him, or passed over his veto. The provision is express that thus "the Same [the Bill] shall be a Law." The

report of a Committee of the Senate is not voted on—perhaps not read by—the members even of the Senate; but the words of the Bill are. The Bill is transmitted to the House, and it—not the Committee's report— is passed there. The Bill is then sent to the President for his approval. He does not approve a Committee report, if by any chance he should see it. He approves the words of the Bill and it becomes the law. Under the statutes on the subject the Bill as soon as passed by either House is printed and becomes the authentic Bill: 1 U.S.C.A. § 26. On final passage and printing, 44 U.S. C.A. § 196, the printed Acts are evidence of the laws passed; 1 U.S.C.A. § 30. The words of the Act are the law. Only when the words of the law are difficult of understanding can what happened in passing it be resorted to for aid. Its clear meaning cannot be so altered. Nor can anything be thus added to it. Nor can putting an example into the Regulation add to or change the law as passed.

■■ So recourse is had to Section 115 (h) of the Revenue Act of 1936, 26 U.S.C. A. Int.Rev.Acts, page 870, in substance stating that a distribution by or on behalf of a corporation shall not be considered a distribution of earnings and profits of the corporation if no gain to such distributee was recognized by law or if the distribution was not subject to tax because it did not constitute income to him within the meaning of the Sixteenth Amendment. This Section has reference not to the taxes or credits of the corporation, but only to the taxation of the shareholder, as a reading of the whole Section will show. Subsection (h) means that when the shareholder gets something in the way of a dividend which is not presently taxable, it will be held taxable as a dividend when the impediment is removed, or the value which he has received is finally realized. Thus in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, a stock dividend, which is a capitalization of earnings and profits of the corporation, was held not presently taxable to the shareholder because he had not realized any gain; but when on the liquidation of the corporation, or by sale of his stock he does realize the gain, it is all then taxable to him as gain. We do not think this provision has any bearing on the 1942 amendment under discussion which relates to the taxation of the corporation itself for not distributing its current income.

If the deficit of this Company had been caused directly by a stock dividend, as the language of the court in Century Electric Co. v. Commissioner, supra, indicates the court there thought, we might agree that the Company could not secure the credit by such an act. But the stock dividend here was lawfully accomplished in 1924, twelve years before this surtax on undistributed profits ever existed. Since 1924 this $100,-000 has from the corporate standpoint been irrevocably taken out of distributable earnings and profits, or surplus, and has been capital, which could not according to the law recognized in Eisner v. Macomber, supra, and all the authorities, be distributed to shareholders unless on due proceedings to reduce the capital stock. There was then left a substantial surplus. This was lost and the deficit created in the depression years by operating losses. We hold this corporation was entitled to the credit against surtax in the tax years here involved, and the judgment is

Affirmed.